# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| A & E BAIL BONDS, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. N18C-06-208 SKR |
| EDWARD SUTTON III, | ) ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| A & E FINANCIAL SERVICES, LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. N18C-08-292 SKR |
| EDWARD SUTTON III and SHERRI SUTTON, | ) ) ) ) | |
| Defendants. | ) | |

## DECISION AFTER TRIAL

Sean T. O'Kelly, Esquire, O'KELLY & O'ROURKE, LLC, Wilmington, Delaware, and E. Calvin Harmon, Jr., Esquire, Wilmington, Delaware, *Attorneys for Plaintiffs A & E Bail Bonds, Inc., and A & E Financial Services, LLC*.

Nicholas G. Kondraschow, Esquire, RHODUNDA WILLIAMS & KONDRASCHOW, LLC, Wilmington, Delaware, *Attorney for Defendants Edward Sutton III and Sherri Sutton*.

**RENNIE, J**

# INTRODUCTION

This decision considers two consolidated actions filed by A & E Bail Bonds, Inc. ("AEBB"), and A & E Financial Services, LLC ("AEF"), (collectively, "Plaintiffs") against Edward Sutton III ("Sutton").[1] The underlying civil commercial actions arose from business loan agreements purportedly made between borrower Sutton and lending companies AEBB and AEF.[2]

# FACTUAL OVERVIEW

AEBB, a Delaware corporation, is a licensed bail agent business entity and bail funder.[3] AEBB formed in 2012 but did not become active until 2016.[4] AEBB is run by Edwin J. Swan ("Swan").[5] Swan is the sole employee, business

---

[1] Sutton is an individual doing business as Above & Beyond Bail Bonds. The only involvement of Sherri Sutton, the other named defendant in this case, is her service as guarantor of an agreement that was disposed of at the partial summary judgment stage of this litigation. *See* Defs.' Resp. to Pls.' Mot. Partial Summ. J. Ex. A (D.I. 101) 100-01 (deposition of Edward Sutton III); *A & E Bail Bonds, Inc. v. Sutton*, 2023 WL 2906168, at *1 (Del. Super. Apr. 6, 2023). Accordingly, the Court excludes her from this written decision.

[2] *See* Pls.' First Am. Compl. (D.I. 12) [hereinafter "Am. Compl."]; Def.'s Answers to Am. Compl. (D.I. 18).

[3] *A & E Bail Bonds, Inc. v. Sutton*, C.A. No. N18C-06-208 SKR, 19:2-16 (Del. Super. Apr. 24, 2023) (TRANSCRIPT) (D.I. 135) [hereinafter "Apr. 24 Tr."]; *see also* Licensee Lookup Summary, NAT'L ASSOC. INS. COMM'RS, https://sbs.naic.org/solar-external-lookup/lookup/licensee /summary/1384226?jurisdiction=DE&entityType=BE&licenseType=BBP (listing "A & E BAIL BONDS INC" as a licensed bail agent business entity).

[4] Apr. 24 Tr. 19:20-22.

[5] Based on the record in this case and after assessing the credibility of the witnesses, the Court is convinced that Swan was the "Chief Cook and Bottle Washer" at AEBB and AEF as it pertains to bails and dealings with Sutton. Pls.' Mot. Partial Summ. J. 5 (D.I. 97) ("All three loan agreements were offered through Edwin Swan . . . ."); *A & E Bail Bonds, Inc. v. Sutton*, C.A. No. N18C-06-208 SKR, 47:15-18 (Del. Super. Apr. 25, 2023) (TRANSCRIPT) ("I am the head administrator. Yes.") [hereinafter "Apr. 25 Tr."]; Apr. 25 Tr. 110:5-111:15 (stating that Sutton dealt only with Swan, that Sutton's contract was not with AEBB or AEF, and that Sutton made checks out to AEBB and AEF at Swan's direction only).

administrator, and a minority shareholder of AEBB.[6] As AEBB's business administrator, Swan manages the company's internal accounting. He also receives calls from individuals who need a bail bond and connects them to a licensed bail agent.[7] AEBB's bail agents are "subcontractors" of AEBB.[8] Swan performs background checks on potential new clients to ensure they have the financial means to serve as bail bond cosigners.[9]

AEBB has a total of nine shareholders: Swan, his wife, four of his grandchildren, his daughter Andrea Swan, his former son-in-law Richard J. Kotowski, and an unidentified ninth shareholder.[10] No operating agreement governs the internal affairs of the company. Instead, AEBB operates pursuant to a verbal agreement among the shareholders.[11] AEBB's licensed bail agent "subcontractors" include two of its shareholders, Andrea and Kotowski.[12] AEBB borrows money from AEF and other businesses and accounts controlled by Swan to fund bail bonds.[13]

---

[6] Apr. 24 Tr. 8:18-9:1, 20:23-21:3, 24:1-3.
[7] Apr. 24 Tr. 20:9-15.
[8] Apr. 24 Tr. 24:4-8.
[9] Apr. 24 Tr. 20:16-22.
[10] Apr. 24 Tr. 19:11; Apr. 25 Tr. 46:13-47:1. Each shareholder owns 9.99% of the company, except for Andrea and Kotowski, who jointly own the remaining interest in AEBB, and the unidentified ninth shareholder. Apr. 25 Tr. 46:13-47:9.
[11] Apr. 25 Tr. 47:10-14.
[12] Apr. 24 Tr. 20:14; Apr. 25 Tr. 48:1-7.
[13] See, e.g., Apr. 25 Tr. 96:8-13; Apr. 25 Tr. 79:7-17, 51:12-52:6 ("I've provided [AEBB] with 30,000 from my tax business account to uphold my commitment to ABBB [Above & Beyond Bail Bonds].").

AEF, a Delaware limited liability company, is a lending company that provides commercial loans to small businesses and personal loans to individuals.[14] AEF is not licensed as a bail agent business entity.[15] Swan and a group of investors formed the company in 2015.[16] Swan is the sole employee, business administrator, and a minority owner of AEF, which does not work with any independent contractors.[17] As AEF's business administrator, Swan testified that his "primary job is from an accounting perspective to monitor the books daily."[18] When requests for funds arrive, Swan performs a background check on the individual representing the company that has requested a loan. He then relays that information to the other

---

[14] Apr. 24 Tr. 14:5-18.
[15] Apr. 25 Tr. 22:16-23:3.

Q. . . . Does A&E Financial, the entity, have a bail bond license?
**A. The entity is a financial agency. I don't think they can get licensed.**
Q. That's not my question. Do they have a license?
**A. No.**
Q. A bail bond license?
**A. No.**

*Id.*; *see also* Licensee Lookup Search for "A & E", NAT'L ASSOC. INS. COMM'RS, https://sbs.naic.org/solar-external-lookup/lookup?jurisdiction=DE&searchType=Licensee&entity Type=BE&businessName=a%20%26%20e (click "Search"). This Court described AEF as a licensed bail agent business entity in its April 6, 2023 decision based on erroneous testimony from Swan. *A & E Bail Bonds, Inc. v. Sutton*, 2023 WL 2906168, at *1 (Del. Super. Apr. 6, 2023) ("AEF and AEB . . . were licensed bail agents under the insurance code."). As the record developed, the Court learned that AEF has no such license.
[16] Apr. 24 Tr. 14:19-15:1.
[17] Apr. 24 Tr. 8:18-9:1, 15:2-7, 18:20-19:1. However, Swan testified that he directs employees of his other business, Preferred Business Service Inc ("PBSI"), to keep track of the status of cases for AEF. According to Swan, PBSI and AEF have a contract by which PBSI employees do accounting and tax filing work for AEF. Apr. 25 Tr. 33:7-34:22.
[18] Apr. 24 Tr. 15:2-7.

members of AEF and meets with them to "discuss the terms of the deal."[19] Swan purports to have firsthand knowledge of all dealings between AEF and Sutton.[20]

AEF has four members, each of whom owns a twenty-five percent interest in AEF: Swan, his wife, his daughter Andrea Swan, and his former son-in-law Richard J. Kotowski.[21] No limited liability company agreement governs the internal affairs of the company. Instead, AEF operates pursuant to a verbal agreement among the members.[22] Kotowski serves as AEF's managing member.[23] Kotowski has signed loan agreements and accompanying assignments and acknowledgements on behalf of AEF,[24] but Sutton never worked directly with Kotowski throughout his dealings with AEF.[25]

Preferred Financial Services Inc. ("PFS"), another business entity run by Swan, is not a party to this action.[26] Sutton first entered into a loan agreement (the

---

[19] Apr. 24 Tr. 15:8-16.

[20] Apr. 24 Tr. 9:2-6.

[21] Apr. 24 Tr. 14:3-4; Apr. 25 Tr. 19:11-14, 21:7-12.

[22] Apr. 25 Tr. 19:5-7.

[23] Apr. 24 Tr. 29:14-17.

[24] Apr. 24 Tr. 106:10-15; Pls.' Mot. Partial Summ. J. Ex. C (D.I. 96).

[25] Apr. 25 Tr. 101:16-20; Defs.' Mot. Partial Summ. J. Ex. G (D.I. 95) 11:2-5, 9-11 (Kotowski stating that he only worked with Sutton indirectly).

[26] Swan serves as president of PFS. Pls.' Mot. Partial Summ. J. Ex. A (D.I. 96) 7 ("Edwin J. Swan, President, Preferred Financial Services Inc."). Swan and PFS have a tortured history with this Court. On January 23, 2019, this Court found that they entered into an agreement with another bail bondsman, Rodney Burns, to illegally fund bail bonds, which the Court found was void *ab initio* and formed for the purpose of circumventing the Delaware bail bonds statute. *See Preferred Fin. Servs., Inc. v. A & R Bail Bonds LLC*, 2019 WL 315331 (Del. Super. Jan. 23, 2019), *aff'd*, 2019 WL 4052324 (Del. Aug. 28, 2019).

"2014 Agreement") with PFS on or around March 10, 2014.[27] Sutton entered into a second loan agreement (the "2015 Agreement") with AEF sometime between September 2015 and November 2015.[28] Sutton entered into a third loan agreement (the "AEBB Agreement") with AEBB sometime before January 2, 2017.[29] On or around August 29, 2018, PFS attempted to assign all of its rights pursuant to the 2014 Agreement to AEF.[30]

Sutton failed to repay the total of the amounts he borrowed from PFS, AEF, and AEBB pursuant to the 2014 Agreement, 2015 Agreement, and AEBB Agreement, respectively.[31] This litigation followed.

## PROCEDURAL HISTORY

On June 28, 2018, AEBB sued Sutton in this Court for (1) breach of contract; (2) anticipatory breach of contract; (3) unjust enrichment; (4) quantum meruit; (5) promissory estoppel; and (6) detrimental reliance.[32] AEBB requested money

---

[27] *A & E Bail Bonds, Inc. v. Sutton*, 2023 WL 2906168, at *1 (Del. Super. Apr. 6, 2023) (setting forth the factual history of the case); Pls.' Mot. Partial Summ. J. Ex. A (D.I. 96).

[28] *A & E Bail Bonds*, 2023 WL 2906168, at *2; Apr. 24 Tr. 51:14-52:22; Apr. 25 Tr. 14:6-15:6. The signatures to the written 2015 Agreement document are dated September 1, 2015. Pls.' Mot. Partial Summ. J. Ex. C (D.I. 96). However, Sutton claims he never consented to this agreement and that his signature to the agreement was forged. Apr. 25 Tr. 164:7-165:9, 166:16-167:1.

[29] *A & E Bail Bonds*, 2023 WL 2906168, at *2; Am. Compl. ¶¶ 5-12.

[30] *A & E Bail Bonds*, 2023 WL 2906168, at *1; Pls.' Resp. to Defs.' Mot. Summ. J. ¶ 4 ("The 2014 Business Loan Agreement and Demand Promissory Note was first executed by PFS, but was assigned to AEF on August 29, 2018.").

[31] Apr. 24 Tr. 156:19-22; Apr. 25 Tr. 130:4-16; Am. Compl. ¶¶ 13-14.

[32] AEBB Compl. (D.I. 1) ¶¶ 19-51. The original complaint also included a fraud claim that AEBB withdrew on September 28, 2018. *A & E Bail Bonds, Inc. v. Sutton*, C.A. No. N18C-06-208 SKR, Rennie, J. (Sept. 28, 2018) (ORDER) (granting unopposed motion to amend complaint to withdraw fraud claim).

6

damages for the breach of contract claims and equitable relief for the other claims.[33]

On August 30, 2018, AEF sued Sutton in this Court for (1) breach of contract; (2) unjust enrichment; and (3) promissory estoppel and/or quasi-contract.[34] AEF requested money damages for amounts Sutton allegedly owes pursuant to the 2014 Agreement and the 2015 Agreement.[35]

For approximately two years after AEBB and AEF filed their complaints, the actions proceeded separately. Then, on June 3, 2020, Plaintiffs filed a motion to consolidate the AEBB and AEF actions, which the Court granted on June 9, 2020.[36] On October 25, 2022, the Court set trial to begin in the consolidated action on April 24, 2023.[37]

At the close of discovery, on January 31, 2023, Sutton filed a motion for partial summary judgment pertaining only to AEF's claims about the 2014 Agreement.[38] That same day, on January 31, 2023, Plaintiffs filed a motion for partial summary judgment requesting the amounts Sutton allegedly owes pursuant to the 2014 Agreement, the 2015 Agreement, and the AEBB Agreement.[39] On

---

[33] AEBB Compl. (D.I. 1) 11.
[34] AEF Compl. (AEF D.I. 1) ¶¶ 21-35.
[35] AEF Compl. (AEF D.I. 1) 6-7.
[36] Pls.' Mot. to Consolidate Cases (D.I. 37); *A & E Bail Bonds, Inc. v. Sutton*, C.A. No. N18C-06-208 SKR, Rennie, J. (June 9, 2020) (ORDER) (granting motion to consolidate cases).
[37] *A & E Bail Bonds, Inc. v. Sutton*, C.A. No. N18C-06-208 SKR, Rennie, J. (Oct. 25, 2022) (ORDER) (scheduling trial).
[38] Defs.' Mot. Partial Summ. J. (D.I. 95).
[39] *See* Pls.' Mot. Partial Summ. J. (D.I. 96).

March 9, 2023, the Court heard argument on the motions.

On April 6, 2023, this Court found the 2014 Agreement void *ab initio* for violation of 18 *Del. C.* § 4333(d), which requires an individual to be licensed as a bail agent before obtaining an interest in the funds used to post a bail bond. The Court rejected Plaintiffs' arguments that the illegality of the 2014 Agreement was cured by PFS's attempted assignment of its rights in the 2014 Agreement to AEF or could be cured by AEF's exercise of a severability clause found in the 2014 Agreement.[40]

Plaintiffs argued that Sutton admitted in deposition to entering into the 2015 Agreement and the AEBB Agreement, receiving each loan amount, and failing to repay the loans. However, the Court denied Plaintiffs' motion for partial summary judgment due to "material issues of fact in the record about whether Sutton entered the Agreements . . . with the subject entities, and whether and how much of the money provided to Sutton was repaid."[41]

From April 24, 2023, through April 27, 2023, this Court tried the consolidated action, evaluating Plaintiffs' remaining claims based on the 2015 Agreement and the AEBB Agreement. At trial, the Court heard testimony from Sutton and Swan.[42]

---

[40] *A & E Bail Bonds, Inc. v. Sutton*, 2023 WL 2906168, at *4-6 (Del. Super. Apr. 6, 2023).
[41] *Id.* at *7.
[42] Both lay witnesses were available for direct and cross-examination. No expert witnesses testified at this trial.

After the trial, on July 10, 2023, Plaintiffs and Sutton filed competing post-trial briefs.[43]

## STANDARD OF REVIEW

The Court is the finder of fact in a bench trial.[44] Plaintiffs must prove each element of a claim by a preponderance of the evidence, meaning that the Court shall find in favor of the party upon whose side "the greater weight of the evidence is found."[45] If the evidence is in even balance, the party attempting to prove a claim by a preponderance of the evidence has failed to prove it.[46]

## LEGAL ANALYSIS

As the finder of fact, the Court evaluates the credibility of each witness and

---

[43] *See* Pls.' Post-Trial Br. (D.I. 133); Defs.' Post-Trial Br (D.I. 134). Inexplicably, on May 5, 2023, before briefing was completed, Plaintiffs filed a notice of appeal of this Court's April 6, 2023 order to the Delaware Supreme Court. They asserted that the notice was not interlocutory but, rather, was intended to serve as a placeholder. *See* Notice of Appeal to Supreme Court (D.I. 129). On May 11, 2023, Plaintiffs voluntarily dismissed that appeal. *See* Notice of Dismissal of Appeal (D.I. 132).

[44] *Balt. Pile Driving & Marine Constr., Inc. v. Wu & Assocs., Inc.*, 2021 WL 5711454, *2 (Del. Super. Dec. 1, 2021).

[45] *Id.* Superior Court Civil Pattern Jury Instruction 4.1 describes this standard of proof as follows:

In a civil case, the burden of proof is a preponderance of the evidence. Proof by a preponderance of the evidence means that something is more likely than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes the Court believe that something is more likely true than not. Preponderance of the evidence does not depend on the number of witnesses. If the evidence on any particular point is evenly balanced, the party having the burden of proof has not proved that point by a preponderance of the evidence, and the Court must find against the party on that point. In deciding whether any fact has been proved by a preponderance of the evidence, the Court may consider the testimony of all witnesses regardless of who called them, and all exhibits received into evidence regardless of who produced them.

[46] *Preferred Fin. Servs., Inc. v. A & R Bail Bonds LLC*, 2018 WL 587023, at *5 (Del. Super. Jan. 26, 2018) (quoting *Guthridge v. Pen-Mod, Inc.*, 239 A.2d 709 (Del. Super. 1967)).

resolves conflicts in testimony. To do so, the Court considers "the reasonableness or unreasonableness of the testimony, motives of the witnesses, any bias, prejudice or interest," and any other circumstances that affect whether testimony is believable.[47] Here, the reputation for truthfulness of Plaintiffs' witness Swan is marred by his pattern of deceptive representations in previous proceedings in this and other courts, as well as by this Court's independent assessment of his testimony in this trial.[48] In contrast, the testimony of Sutton, serving as his own witness, exhibited specific indicia of reliability: He conceded the wrongfulness of his conduct

---

[47] *Id.* (quoting *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 545-46 (Del. Super. 2005)). When testimony conflicts, "the Court will attempt to make one harmonious story by giving credit to the points of testimony which are worthy of credit and disregarding any portion that is not." *Id.*

[48] *See Preferred Fin. Servs., Inc. v. A & R Bail Bonds LLC*, 2018 WL 587023, at *2, 4 n.38 (Del. Super. Jan. 26, 2018) ("I considered the conflicting testimony of the witnesses [including Swan] and find that neither witness was entirely credible. . . . Swan has a history of attempting to recover debts that were not documented as owed to the moving party as well as a history of duplicitous conduct in the preservation and presentment of evidence."). Delaware courts have repeatedly found that Swan attempted to conceal information from them:

The only reason, as far as the Court can see, for the need to convert the Excel data into paper documents was to filter and hide relevant information—which is also exactly what [Swan's company] PISI did. . . . The Court has no doubt that Swan knew why the information was sought and what information was necessary to identify specific cases—to characterize what PISI did as an 'oversight' is dubious at best. . . . The Court is compelled to impose sanctions on PISI for its willful, contemptuous and defiant behavior in this matter . . . .

*T & H Bail Bonds, Inc. v Preferred Inv. Servs., Inc.*, 2015 WL 5121124, at *5-6 (Del. Super. Aug. 31, 2015); *Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992, at *16 (Del. Ch. July 24, 2013) ("More likely than not, Swan was attempting to cover his tracks and hide from T & H and this Court the fact that money made available by PISI was being loaned to other cash bail agents."); Apr. 25 Tr. 5:4-12:17 (cross-examination of Swan on history of dubious representations in court).

10

in conformity with documentary evidence.[49]

Because this Court, on April 6, 2023, deemed the 2014 Agreement void *ab initio* as illegal and against public policy,[50] it confines this analysis to the 2015 Agreement and AEBB Agreement.

## A. The 2015 Agreement

Plaintiffs and Sutton dispute whether the 2015 Agreement made between AEF and Sutton was ever formed. Plaintiffs argue that the record shows that Sutton "accepted loans from AEF pursuant to a contract with AEF," the 2015 Agreement.[51] Sutton, meanwhile, contends that he has "never done business with A&E Financial."[52]

Swan testified that he negotiated the terms of the 2015 Agreement with Sutton on behalf of AEF during the last week of August 2015, at which time Swan sent

---

[49] *See* Apr. 25 Tr. 180:17-182:14.

Q. As you say, these were all done under the 2014 agreement.
**A. Yes.**
Q. And each one of these had an illegal bail premium associated with it.
**A. Yes.**
. . .
Q. Mr. Sutton, why would you commit 242 illegal acts?
**A. Why?**
. . .
Q. I don't understand that answer. Did you do it or not?
**A. I did it. I'm not disputing it.**

*Id.*
[50] *A & E Bail Bonds, Inc. v. Sutton*, 2023 WL 2906168, at *4-6 (Del. Super. Apr. 6, 2023).
[51] Pls.' Post-Trial Br. (D.I. 133) 9-11.
[52] Apr. 25 Tr. 109:23-110:12.

Sutton the written version of the 2015 Agreement to sign. Swan did not see Sutton sign the 2015 Agreement but testified that a version of the 2015 Agreement signed by Sutton was returned to AEF's office in November 2015.[53] Swan believes that Sutton acknowledged the 2015 Agreement by returning documents to AEF that describe the loan.[54] However, Sutton testified that he did not sign the 2015 Agreement, that his signature was forged, and that the first time he saw the 2015 Agreement was at his deposition in 2020.[55]

On cross-examination at trial, Sutton conceded that he had formed loan agreements with Swan to gain funding for bail bonds and had failed to repay some of those loans in full, though he was unclear about the precise distinctions between Swan's various controlled business entities.[56] Sutton admittedly directed repayment for some of those loan agreements to AEF "quite often."[57] Sutton's statements about his agreements with Swan and his payments to AEF sufficiently demonstrate that

---

[53] Apr. 24 Tr. 51:17-52:22.
[54] Apr. 24 Tr. 86:4-10.
[55] Apr. 25 Tr. 99:21-100:12.
[56] Apr. 25 Tr. 110:5-111:4.

Q. Do you think you owe any amounts to A&E Financial?
**A. There may be some . . . .**

Q. . . . Did you ever make a payment to A&E Financial or A&E Bail Bonds?
**A. Only whenever I was directed to make a payment . . . .**

*Id.* Swan testified that AEF made thirty-one loans to Sutton in 2015, of which five or seven were not paid back, and sixty-seven loans to Sutton in 2016, of which perhaps thirty-three were not paid back. Apr. 24 Tr. 64:10-12, 66:2-10, 74:16-19, 75:18-22.
[57] Apr. 25 Tr. 110:19-111:10.

AEF and Sutton had entered into some loan agreement, despite the enduring ambiguity as to which of Swan's business entities was the proper payee for a specific given loan.

Regardless, Sutton argues as an affirmative defense that the 2015 Agreement is "illegal, unenforceable, against public policy and void for the same reasons [as] the 2014 Agreement."[58] He contends that, pursuant to 18 *Del. C.* § 4333, "A&E Financial, the entity, must be licensed as a bail agent," but that "[l]ike Mr. Swan and PFS, it is not."[59] Plaintiffs argue, in contrast, that Sutton failed to establish that the 2015 Agreement is illegal because "AEF contains licensed individuals, which satisfies the legal requirement under 18 *Del. C.* § 4333."[60]

In Delaware, "it is against the public policy of this State to permit its courts to enforce an illegal contract prohibited by law. . . . [W]hen such is the fact, neither party has a remedy to any extent against the other."[61] Despite the fact that Delaware is openly contractarian, Delaware courts refuse to enforce illegal contracts.[62] The defendant who raises illegality as an affirmative defense bears the burden to show

---

[58] Defs.' Post-Trial Br. (D.I. 134) 3.

[59] *Id.* 4.

[60] Pls.' Post-Trial Br. 7, 20-23.

[61] *Della Corp. v. Diamond*, 210 A.2d 847, 849 (Del. 1965). A court "may never enforce agreements void *ab initio*, no matter what the intentions of the parties." *A & E Bail Bonds*, 2023 WL 2906168, at *4 (quoting *Geronta Funding v. Brighthouse Life Ins. Co.*, 248 A.3d 47, 61 (Del. 2022)).

[62] In such a case, Delaware courts generally "leave the parties where they find them." *A & E Bail Bonds*, 2023 WL 2906168, at *4.

13

that the contract is illegal.[63]

Pursuant to 18 *Del. C.* § 4333(d)(2), an individual must be licensed as a bail agent before he or she can act as a bail funder.[64] Likewise, 18 *Del. C.* § 4354(a) criminalizes unlicensed performance of bail agent functions, listing the following conduct as a felony:

> [to] act in the capacity of a bail agent, advertise or solicit bail bond business, perform any of the functions or duties of a bail agent, collect premiums, charge fees or otherwise exercise or attempt to exercise powers prescribed for bail agents, unless such person is qualified, licensed and appointed as provided in this subchapter.

Here, AEF is not licensed as a bail agent business entity.[65] AEF must be licensed as a bail agent business entity before it can act as a bail funder. The terms of the 2015 Agreement and the course of conduct of Swan and Sutton pursuant to that agreement indicate that AEF entered into the 2015 Agreement with Sutton to

---

[63] *See, e.g.*, *Tygon Peak Capital Mgmt., LLC v. Mobile Invs. Investco, LLC*, 2023 WL 4857281, at *7 (Del. Ch. July 31, 2023).

[64] The legislature adopted this statute "with the specific intent of curbing abuses in the bail bond system. Specifically, § 4333(d) . . . was enacted to 'restrict participation by unlicensed persons in the bail bond business.'" *A & E Bail Bonds*, 2023 WL 2906168, at *5 (quoting *Preferred Fin. Servs., Inc. v. A & R Bail Bonds LLC*, 2019 WL 315331, at *5 (Del. Super. Jan. 23, 2019)). A bail funder is anyone "who provides or loans the funds to property bail agents or bail agent business entities that are used . . . for purposes of furnishing property bail in court proceedings." 18 *Del. C.* § 4332(3). Further, 18 *Del. C.* § 4333(d)(5) defines a "financial interest" in a bail agent's business or in bail bonds as "an interest that could result in directly or indirectly receiving a pecuniary gain or sustaining a pecuniary loss as a result of an ownership or interest in a business entity." For example, an individual who has an ownership interest in a bail agent's business of greater than ten percent or is a creditor of the business in an amount of greater or equal to ten percent of the business's debt has a "financial interest" in that business. 18 *Del. C.* § 4333(d)(5)(a)-(b).

[65] Apr. 25 Tr. 22:16-23:3, 34:7-35:11.

perform the functions of a bail funder without a bail agent license, in direct contravention of the statute.[66] The bail agent licenses of AEF members Andrea Swan and Richard J. Kotowski do not cure this legal defect.[67]

Further, pursuant to 18 *Del. C.* § 4333(d)(2), an individual must be licensed as a bail agent before he or she can own a ten percent or greater financial interest in a bail agent's business or in bail bonds. Here, AEF operates as a bail funder, a type of bail agent,[68] by loaning individuals the money to post bails.[69] Therefore, any individual who owns a ten percent or greater financial interest in AEF's business must carry a bail agent license. Swan has no bail agent license, so his twenty-five percent ownership interest in AEF's business violates the statute.[70]

On behalf of AEF, Swan negotiated the 2015 Agreement with Sutton by which

---

[66] Pl.'s Mot. Partial Summ. J. Ex. C (D.I. 97); Apr. 24 Tr. 27:2-21. The following testimony of Swan is illustrative:

Q. . . . I'm referring to A&E Financial and Mr. Sutton . . . . Did the parties also agree between themselves in negotiation what the loans were to be used for?
**A. Yes, we did.**
Q. What was that?
**A. Yeah. They were a business loan made to Mr. Sutton so that he could post bails. . . . Those moneys were for posting of bails and the posting of bails only.**

Apr. 24 Tr. 36:8-37:9.
[67] Further, even if AEF was licensed as a bail agent business entity, AEF member Swan is not licensed as a bail agent, unlike AEF members Andrea Swan and Richard J. Kotowski. Swan must be licensed as a bail agent before he can perform bail agent or bail funder functions. He admitted to conduct that goes beyond the "tasks that are strictly clerical in nature," supervised by a licensed bail agent, that are permitted by statute. 18 *Del. C.* § 4334(a). Swan's work for AEF constitutes performance of bail funder functions without a valid bail agent license.
[68] 18 *Del. C.* § 4332(14).
[69] Apr. 24 Tr. 36:21-37:9.
[70] Apr. 25 Tr. 19:11-14, 21:7-12, 23:4-8.

15

AEF was to operate as an unlicensed bail funder. At that time and thereafter, AEF lacked the bail agent business entity license it needed to legally serve as a bail funder, and Swan lacked the bail agent license he needed to legally hold a twenty-five percent ownership interest in AEF's business. Hence, the Court finds that Swan, through AEF, entered into the 2015 Agreement with Sutton with an intent to violate 18 *Del. C.* § 4333, just as PFS did when it entered into the 2014 Agreement. The 2015 Agreement, therefore, is void *ab initio* as illegal and against public policy and is unenforceable in this Court.

## B. The AEBB Agreement

Plaintiffs and Sutton also dispute whether the AEBB Agreement made between AEBB and Sutton in 2017 was ever formed. Plaintiffs argue that AEBB verbally formed a valid contract with Sutton.[71] They contend that Sutton knew about the verbal AEBB Agreement and accepted loan funds pursuant to it.[72] However, Sutton argues that he never formed any contract with AEBB because he had no written agreement with AEBB and only paid checks to AEBB at Swan's request.[73]

Initially, in Sutton's answer to AEBB's first amended complaint, he conceded that he had entered into loan agreements with AEBB, merely disputing the dollar

---

[71] Pls.' Post-Trial Br. (D.I. 133) 8-12.
[72] *Id.*
[73] Defs.' Post-Trial Br. (D.I. 134) 2.

16

amounts of specific loans.[74]  On cross-examination at trial, Sutton viewed and acknowledged lines from that answer which state that AEBB and Sutton entered into loan agreements.[75]  Further, as Sutton noted, he had made payments to AEBB at Swan's request in the course of returning bail moneys.[76]  Accordingly, AEBB and Sutton have effectively agreed that they formed some loan agreement, despite Sutton's subsequent turnabout on the issue.  Thus, the Court finds that through the dealings of Swan and Sutton, AEBB and Sutton entered a loan agreement.

Sutton argues as an affirmative defense that "[e]ven if Mr. Sutton had an agreement with A&E Bail Bonds, . . . it is illegal, unenforceable, against public policy and void . . . for the same reasons [as] the 2014 Agreement."[77]  Plaintiffs, meanwhile, argue that Sutton cannot meet his burden to establish that the AEBB Agreement is illegal because AEBB is licensed as a bail agent business entity.[78]

---

[74] Def.'s Answer to Am. Compl. (D.I. 18) ¶¶ 20, 25 ("Admitted the parties entered into an agreement; denied as to the remainder").  Sutton claims that his admission in his answer to Plaintiffs' first amended complaint that he had validly formed loan agreements with AEBB is invalid because (1) his attorney who drafted the answer has since withdrawn from the representation; (2) he did not know why the answer made that admission; and (3) he disputed the existence of any agreement with AEBB elsewhere in the record.  Defs.' Post-Trial Br. (D.I. 134) 2 n.2; Apr. 25 Tr. 110:13-18 ("I don't have any agreement with A&E Bail Bonds.").  Such arguments are unavailing.

[75] Apr. 25 Tr. 160:2-161:11, 188:11-193:4.  Counsel for Sutton objected to the line of questioning, arguing that Sutton was not bound by these lines of his answer because the attorney who drafted the answer had since withdrawn from representing Sutton.  The Court overruled this objection, stating that the answer was on the record and that the connection of the answers to the complaint could "be pointed out in post-trial briefing."  Apr. 25 Tr. 161:12-163:1.

[76] Apr. 25 Tr. 110:19-111:15.

[77] Defs.' Post-Trial Br. (D.I. 134) 3.

[78] Pls.' Post-Trial Br. (D.I. 133) 7, 19-21.  Plaintiffs also argue that the AEBB Agreement does not violate 18 *Del. C.* § 4333 because that statute does "not apply to banks and financial institutions

17

Further, they contend that this Court "should be averse to voiding agreements because of illegality and should prioritize principles supporting the freedom to contract."[79]

Contractual formalities should not be used as camouflage to facilitate an illegal course of conduct. In the rare event that contracting parties are found to have entered into an agreement in order to circumvent the law, *i.e.*, to enable a party to do indirectly what it was barred from doing directly, and the agreement itself is void *ab initio*, this Court will not enforce that agreement.[80]

---

supervised and regulated under Title 5" and AEBB qualifies as a "financial institution" pursuant to Delaware Code Title 5. *Id.* 20-21. As this Court stated in its April 6, 2023 decision:

Title 5 Del C. § 2202(a) provides a separate licensure scheme that includes persons "desiring to transact the business of lending money" in Delaware, but specifically excludes any such person who "is lending money in accordance with and as authorized by any other applicable law of this State." There is no evidence of record that Plaintiffs are licensed under Title 5 as banks or financial institutions, and Plaintiffs themselves assert that they are licensed under the Insurance Code [of Delaware].

*A & E Bail Bonds, Inc. v. Sutton*, 2023 WL 2906168, at *3 n.40 (Del. Super. Apr. 6, 2023).

[79] Pls.' Post-Trial Br. (D.I. 133) 19.

[80] *Preferred Fin. Servs., Inc. v. A & R Bail Bonds LLC*, 2019 WL 315331, at *6 (Del. Super. Jan. 23, 2019) (refusing to enforce an illegal agreement); *AB Stable VIII LLC v. Maps Hotels & Resorts One LLC*, 2020 WL 7024929, at *80 (Del. Ch. Nov. 30, 2020) (". . . Delaware law does not permit a court to enforce a contract prohibited by law."); *Lighthouse Behavioral Health Sols., LLC v. Milestone Addiction Counseling, LLC*, 2023 WL 3486671, at *10 (Del. Ch. May 17, 2023) (". . . [A] contract is illegal per se if it 'violates the explicit mandate of a statutory provision . . . .'"); *Della Corp. v. Diamond*, 210 A.2d 847, 850 (Del. 1965) (". . . [T]he agreement in question is illegal and, such being the case, the courts of this State will aid neither party to enforce rights under it."); *Restatement (Second) of Contracts* § 178(1) (Am. L. Inst. 1981) ("A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms."). This rule is nuanced: "[C]ourts are averse to voiding agreements on public policy grounds unless their illegality is clear and certain. Furthermore, courts exercise this authority with caution, and only in cases that are free from doubt." *Lighthouse Behavioral Health Sols.*, 2023 WL 3486671, at *10 (outlining multi-factor

Here, Swan testified that AEBB set out to form a loan agreement with Sutton in December 2016 because, that month, Sutton had stopped repaying PFS and AEF on the 2014 Agreement and 2015 Agreement, respectively.[81] At that time, in response, "A&E Financial Services suspended doing business with Mr. Sutton."[82] Swan, however, offered to continue loaning Sutton money to fund bails through AEBB, rather than PFS or AEF, on the same terms as the 2015 Agreement.[83] Verbal negotiations between Swan and Sutton on the 2014 Agreement, the 2015 Agreement, and the AEBB Agreement overlapped: In Swan's words, he and Sutton were "negotiating on two tracks at the same time."[84] For instance, after AEF stopped funding bails for Sutton, Swan told Sutton that they could "continu[e] funding with A&E Bail Bonds" only if the 2015 Agreement with AEF was "modified to cover [Sutton's] outstanding balance" due to AEF.[85] Swan likewise conditioned this same funding from AEBB on Sutton repaying his outstanding balance due to PFS pursuant

---

test for enforceability of statute-violating agreement); *Bunting v. Citizens Fin. Grp., Inc.*, 2007 WL 2122137, at *6 (Del. Super. June 29, 2007) ("The rule that a contract in violation of a statute is invalid and unenforceable is not inflexible.").

[81] Apr. 24 Tr. 149:8-150:6.

[82] Apr. 25 Tr. 76:21-77:16.

[83] *Id.*; Apr. 24 Tr. 150:4-151:3.

[84] Apr. 24 Tr. 150:12-151:9.

[85] Apr. 24 Tr. 190:21-191:22. The testimonies of Swan and Sutton show that Swan exerts more control over AEBB than his title as AEBB's business administrator bespeaks: He is AEBB's shot caller, independent negotiator, and Rule 30(b)(6) designee for depositions. Each of Sutton's transactions to repay the loans were made in amounts directed by Swan to entities chosen by Swan. Apr. 25 Tr. 110:19-111:15. Swan was the only representative of AEBB with whom Sutton interacted related to the loans. Apr. 25 Tr. 115:13-116:3 ("All my dealings were with Mr. Ed Swan and [his company] PFSI.").

to the 2014 Agreement.[86]

Accordingly, the content of the negotiations, agreements, and transactions between Swan and Sutton on the record, as well as their associated timelines, indicate that AEBB entered into the AEBB Agreement with Sutton to continue the illegal course of dealings of PFS and AEF with Sutton from the 2014 Agreement and the 2015 Agreement, circumventing the bail agent licensure requirements of 18 *Del. C.* § 4333(d).

It is long established that parties' conduct pursuant to a contract can be a basis for finding that contract illegal, and a fictitious contractual form does not cure such a defect.[87] Pursuant to 18 *Del. C.* § 4334(a), an employee of a bail agent business entity who is not licensed as a bail agent may only legally "perform tasks that are strictly clerical in nature . . . under the supervision of a licensed agent who shall be

---

[86] Apr. 25 Tr. 77:5-16.

"So at the end of December [2016] when we're talking about when A&E Financial Service suspended doing business with Mr. Sutton and discussing going back to funding with A&E Bail Bonds, one of the conditions to do that was to repay the outstanding balance that was still lingering from Preferred Financial Service through August of 2015. So, we were leveraging the Change in Terms Agreement in order to get that balance that was still owed to Preferred Financial Service before we entered into an agreement to continue funding through A&E Bail Bonds."

*Id.*

[87] *Della Corp. v. Diamond*, 210 A.2d 847, 849 (Del. 1965) (finding agreement allowing unlicensed plaintiff to purchase and sell alcoholic beverages illegal and unenforceable despite guise of fictitious managerial contract).

20

responsible for any noncompliance" with the statute.[88]

Here, Swan describes his position as the business administrator of AEBB, an accounting-focused role, yet he has firsthand knowledge of each of AEBB's transactions, negotiates AEBB's contracts with bail agents, sets up AEBB's bank accounts, vets AEBB's clients, monitors AEBB's bails, pays for bails, and holds meetings with bail agents at the courthouse.[89] This is bail funder work, not supervised clerical work for a bail agent business entity.[90] Swan is not licensed as a bail agent, and his conduct on behalf of AEBB exceeds the scope of work that 18 *Del. C.* § 4334(a) permits him to perform for AEBB.[91] Moreover, the individual bail agent licenses of fellow AEBB shareholders Andrea Swan and Richard Kotowski do not cover Swan himself.

Upon weighing the credibility of the witnesses' testimony and considering the totality of the evidence on the record, the Court finds that the AEBB Agreement is legally fictitious and was formed with the intent to circumvent Delaware law. AEBB entered into the AEBB Agreement with Sutton as a guise to circumvent the bail agent

---

[88] For instance, these "strictly clerical" tasks include "assisting customers to complete applications and taking payments and providing receipts or other documentation to principal, indemnitors, customers, or other persons." 18 *Del. C.* § 4334(a).

[89] Apr. 24 Tr. 9:2-6, 20:3-21:20; Apr. 25 Tr. 80:16-23, 103:3-105:2.

[90] *See* Apr. 25 Tr. 102: 8-11. A bail funder "provides or loans the funds to property bail agents or bail agent business entities that are used or may be used for purposes of furnishing property bail in court proceedings," regardless of whether such loans are classified as personal or business loans. 18 *Del. C.* § 4332(3).

[91] *See* 18 *Del. C.* § 4333(d)(2) ("A person must be licensed as a bail agent under this section before any such person may act as a bail funder . . . .").

21

licensure requirements of 18 *Del. C.* § 4333(a) and (d), in order to continue the same illegal course of conduct that PFS had pursued with Sutton through the 2014 Agreement. Therefore, the AEBB Agreement is void *ab initio* as illegal and against public policy and is unenforceable. Of course, a licensed bail agent business entity in Delaware can recover debts on bails that it funded pursuant to a legitimate business relationship when its unlicensed employee merely performs clerical duties under the supervision of a licensed bail agent.[92] However, the Court will not enforce a contract that facially satisfies formalities when the contracting parties' intent in forming the agreement was to violate the law.

## CONCLUSION

The Court finds in favor of Sutton and against AEBB and AEF on all counts. Accordingly, judgment is entered in favor of Sutton on all counts in this consolidated action. But Sutton's knowing participation in this illegal scheme will not receive this Court's imprimatur. Thus, the Court hereby refers any underlying criminal matters implicated in this civil action to the Attorney General for the State of Delaware for potential criminal prosecution.

**IT IS SO ORDERED,** this 6th day of November, 2023.

_____
Sheldon K. Rennie, Judge

---

[92] *See* 18 *Del. C.* § 4334(a).

Original to Prothonotary

cc:    Delaware Attorney General Kathy Jennings, Esquire

      Sean T. O'Kelly, Esquire, O'Kelly & O'Rourke, LLC, Wilmington, Delaware

      E. Calvin Harmon, Jr., Esquire, Wilmington, Delaware

      Nicholas G. Kondraschow, Esquire, Rhodunda Williams & Kondraschow, Wilmington, Delaware